*NOT FOR PUBLICATION*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSEPH CARRATURA, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 20-05483 (FLW) <br><br> **OPINION** |

Before the Court is Plaintiff Joseph B. Carratura's ("Plaintiff" or "Mr. Carratura") appeal of Administrative Law Judge ("ALJ") Sharon Allard's (the "ALJ") decision denying Plaintiff's application for disability insurance benefits ("DIB") based on the ALJ's determination that Plaintiff was not disabled under the Social Security Act (the "Act"), 42 U.S.C. §§ 1381 *et. seq.* (ECF No. 1, Compl.). Plaintiff argues the ALJ failed to include all of Plaintiff's limitations in the residual functional capacity ("RFC"), and that the ALJ erroneously found that Plaintiff could perform his past relevant occupation by relying exclusively on the Medical Vocational Guidelines.

For the reasons set forth herein, the Commissioner of Social Security's (the "Commissioner") decision denying benefits is vacated and the Court remands this matter for further proceedings.

## I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on February 1, 1967, and he was forty-eight years old on the alleged disability onset date of March 15, 2015. (Admin. R. at 635.) Plaintiff, who has a tenth grade educational level, worked as a truck dispatcher and an automobile salesperson prior to his alleged disability. (Admin. R. at 50, 80, 654.) He filed an application for disability insurance benefits on

May13, 2016, alleging breathing difficulties, stroke, diabetes, depression, and anxiety.  (Admin. R. at 635, 653.)  Plaintiff's date of last insured ("DLI") status was March 31, 2018.  (Admin. R. at 25.) On September 8, 2016 and on December 8, 2016, the Social Security Administration denied Plaintiff's DIB application.  (Admin. R. at 23.)

On August 30, 2018, the ALJ held a hearing, and on December 19, 2018, the ALJ determined that Plaintiff was not disabled under the relevant statutes.  (Admin. R. at 23-37.)  Thereafter, following an opportunity to send additional evidence or statements about the facts and law of the case, the Office of Appellate Operations notified Plaintiff that his request for review of the ALJ's decision was denied.  (Admin. R. at 6.)

## A.   Review of the Medical Evidence

On August 11, 2016, Plaintiff had a consultative examination with Victoria Miller, Ph.D.  (Admin. R. at 799-801.)  In her report, Dr. Miller diagnosed Plaintiff as having adjustment disorder with mixed anxiety and depressed mood and cocaine use disorder.  (Admin. R. at 801.)  Dr. Miller also noted that Plaintiff was "casually dressed, adequately groomed, and maintained good eye contact."  (Admin. R. at 800.)  Dr. Miller further noted that Plaintiff had "fair impulse control with no evidence of any thought disorder" and that Plaintiff reported "no limitation" in his ability to maintain personal care.  (Admin. R. at 800.)

On August 23, 2016, Plaintiff began treatment with Ocean Mental Health Services.  (Admin. R. at 816.)  During the therapeutic intake evaluation, Kim Class, L.P.C., diagnosed Plaintiff with Bipolar II Disorder.  (Admin. R. at 814-825.) In addition, it was noted that Plaintiff was oriented in all spheres, appropriately dressed, friendly, and had average intellectual functioning.  (Admin. R. at 822-23.)  Ms. Class also determined that Plaintiff had an appropriate, stable, and calm mood, normal thought content, clear and coherent thought process,

pressured speech and had good reliability, and fair memory, insight, and judgment. (*Id.*)  Thus, Ms. Class recommended that Plaintiff return for individual counseling.  (Admin. R. at 825.)

On September 29, 2016, Plaintiff denied having depression, mood swings, anxiety, phobias, and insomnia during an office visit at BC Medical Care, LLC.  (Admin. R. at 856.)  On November 14, 2016, Plaintiff returned to Ocean Mental Health Services, where Kim Fallon, ARNP, diagnosed Plaintiff with Major Depressive Disorder, Panic Disorder, Generalized Anxiety Disorder, and Bipolar II Disorder.  (Admin. R. at 880-81.)  Ms. Fallon observed impairments in speech, cognitive functioning, short-term memory, and long-term memory, in addition to dysphoric and anxious mood and poor memory.  (Admin. R. at 879-917.)  She prescribed Zoloft, finding that Plaintiff was "in need of medication initiation" and ongoing monitoring.  (Admin. R. at 881.)

Several weeks later, on December 1, 2016, Plaintiff "reported that his depression was somewhat improved, although he had continued symptoms."  (Admin. R. at 826.)  On February 5, 2017, Leslie Cauvin, D.O., at BC Medical Care, LLC, noted that Plaintiff had a moderately limited ability to "understand and remember short, simple instructions;" "carry out short, simple instructions;" make "judgments on simple work-related decisions;" and perform "repetitive tasks at a consistent pace." (Admin. R. at 875-76.)  In addition, Dr. Cauvin noted that Plaintiff had markedly limited ability to "understand and remember detailed instructions," "carry out detailed instructions," "interact appropriately with co-workers," and "respond appropriately to changes in a routine work setting."  (Admin. R. at 875-76.)  Lastly, she found that Plaintiff had extremely limited ability to "interact appropriately with the public," with supervisors, and "respond appropriately to work pressures in a usual work setting." (Admin. R. at 875-76.)  Dr. Cauvin

3

further noted that Plaintiff "cannot concentrate consistently, should avoid high stress tasks" in a full-time workweek in a competitive work setting.  (Admin. R. at 876.)

On March 16, 2017, Plaintiff returned to Ms. Fallon who found that Plaintiff had not been taking the prescribed Xanax for several months and had taken the prescribed Zoloft with sporadic compliance.  (Admin. R. at 883.)  Ms. Fallon discussed with Plaintiff the need for the medication to be taken daily "to reach a steady state in his body." (Admin. R. at 883.)  Following an examination, Ms. Fallon indicated that Plaintiff had average intellectual functioning, fair memory and reliability, and was friendly and cooperative.  (Admin. R. at 885).  At subsequent appointments in 2017 and 2018, Plaintiff reported the same symptoms.  (Admin. R. at 890; 907-917.)  On March 20, 2018, Ms. Fallon noted that Plaintiff "has been off medication since January" and Plaintiff "missed his last appointment, so [he] didn't have refills and never called to ask for additional refills." (Admin. R. at 907).  Plaintiff stated that "[h]e questioned if his medications were helping him" but that he was "feeling even more miserable being off of his medications." (*Id.*)  Plaintiff resumed taking medication in May 2018, but according to his records, was taking them off schedule.  (Admin. R. at 901) (noting that he was taking his medication "maybe every other day.").  On May 23, 2018, it was noted that Plaintiff was "not compliant with treatment" and that treatment was still needed.  (Admin. R. at 903-04).

B.    **Testimonial Evidence**

On August 30, 2018, Plaintiff and Vocational Expert, Ms. Anderson,[1] testified at Plaintiff's insurance benefits hearing.  (Admin. R. at 48.)  Plaintiff began by discussing basic background information, including his educational level, his living arrangements, and his family composition. (Admin. R. at 50-53.)  Specifically, Plaintiff testified that he has a tenth-grade educational level,

---

[1]    The Court notes that Ms. Anderson's full name is not stated in the record.

that he has a driver's license but does not own a vehicle, that he lives alone in a ranch-style home, and that he has two children.  (Admin. R. at 50-53.) Plaintiff further testified that he last worked as an automobile salesperson in 2015, and that prior to working in automobile sales, he worked as a dispatcher for a truck company for three to four years.  (Admin. R. at 59, 65.) As a dispatcher, Plaintiff explained that he spent half the day doing dispatch work on the phone and half the day completing safety compliance checks on automobiles.  (Admin. R. at 65-66.)

Plaintiff then testified about his medical conditions.  He explained that his stroke, which occurred before his automobile sales job, caused problems with his right arm for which he received physical therapy treatment.  (Admin. R. at 54-56.) Plaintiff also testified about his depression, anxiety, breathing, and concentration, which he claimed limit his ability to work.  (Admin. R. at 53-63.)  Plaintiff indicated that he first started having a problem with depression when his automobile sales job ended in 2015, and as a result, he began seeing a psychiatrist and taking medication.  (Admin. R. at 58-61.)  Once the company shut down, Plaintiff looked for other work "a little bit in the beginning" and then stopped because of his depression.  (Admin. R. at 69.)  Plaintiff further testified that he has never gone to "the hospital emergency room or urgent care because of [his] heart," hypertension, or breathing, and that in 2007, he was diagnosed with diabetes and takes insulin regularly.  (Admin. R. at 71-72, 75.) Lastly, Plaintiff added that he has sleep apnea and takes prescription medication for it but "it's not working." (Admin. R. at 76-77.)

With respect to daily activities, Plaintiff testified that he does not have difficulties dressing himself, but that he does not bathe or shower every day, does not prepare meals for himself, does not do laundry, and does not take care of the lawn.  (Admin. R. at 69-73.)

Following Plaintiff's testimony, Ms. Anderson testified regarding Plaintiff's past work. (Admin. R. at 87.) At the outset, she opined that Plaintiff's salesperson and dispatcher jobs had an

exertion level of "light." (Admin. R. at 88.) The ALJ then posed a series of hypothetical questions to the vocational expert.  Specifically, the ALJ asked Ms. Anderson to consider an individual of Plaintiff's "age, background, experience, and education" with the residual functional capacity to perform light work with exceptions of lifting and carrying, standing/walking, climbing, kneeling, stooping, crouching, crawling, and limitations to concentrated exposure to extreme temperatures. (Admin. R. at 89.) The ALJ asked whether the individual could perform Plaintiff's past work, if he or she was "off task 10 percent of the work day, due to their impairments."  (Admin. R. at 89.) Ms. Anderson testified that such an individual would be able to perform Plaintiff's past work as a dispatcher and salesperson.  (Admin. R. at 89.)  However, when asked if that same individual could perform Plaintiff's past work if he or she was "off task 15 percent of the work day," Ms. Anderson testified that the hypothetical individual would be unable to perform the work of a dispatcher or salesperson.  (Admin. R. at 91.)  Finally, the ALJ asked whether the hypothetical individual could perform Plaintiff's prior jobs if he or she could "understand and execute simple and routine tasks, have incidental contact with the public but not with tasks that involve direct customer service." (Admin. R. at 90-91.)  Ms. Anderson opined that the individual could not perform either of Plaintiff's prior jobs under those circumstances.  (Admin. R. at 90-91.)

## II.   STANDARD OF REVIEW

### A.   Review of Commissioner

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions regarding questions of fact are

deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential.  *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance.  *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, <u>507 U.S. 924 (1993)</u>.  Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence.  *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

**B.**    <u>**Standard for Entitlement to Benefits**</u>

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements.  *See* 42 U.S.C. § 423(c).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or <u>mental impairment</u> which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or <u>mental impairment</u> or <u>impairments</u> are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §

423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id*. at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id*. at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140 n.5. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id*. A claimant who does not have a severe impairment is not considered disabled. *Id*. at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in the Impairment List. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id*. at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the

ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id*. An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the RFC to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id*.

III. **DISCUSSION**

A. **The ALJ's Findings**

After the hearing, the ALJ issued a written decision on December 19, 2018, finding that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act at any time from March 15, 2015, through March 31, 2018. (Admin. R. at 37.) As an initial matter, the ALJ noted that Plaintiff last met the insured status requirements of the Act on March 31, 2018. (Admin. R. at 23.)

At step one, the ALJ notes that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of March 15, 2015, through his DLI of March 31, 2018. (Admin. R. at 25).

At step two, the ALJ found that Plaintiff had the following severe impairments: "asthma, obesity, depression, anxiety disorder, diabetes mellitus, sleep apnea." (Admin. R. at 25-26.)  Therefore, taking into consideration the applicable regulations as well as Social Security Ruling 85-28, the ALJ concluded that these impairments "significantly limit the ability to perform basic work activities." (*Id.*)  With respect to Plaintiff's right shoulder tendinopathy and history of transient ischemic attack, the ALJ found these impairments to be "non-severe," reasoning that they "result in minimal, if any, limitation on the [Plaintiff's] ability to perform work-related activities when properly treated." (*Id.*)

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (Admin. R. at 26.)  Specifically, with respect to Plaintiff's mental impairments, which form the basis of this appeal, the ALJ concluded that none of these impairments either singly or in combination met or equaled the criteria of Listing 12.04 or 12.06.  (Admin. R. at 27.)  In that connection, with respect to Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adopt or manage oneself, the ALJ found that Plaintiff suffered from only mild or moderate limitations.  (Admin. R. at 26-28.)

At step four, in calculating Plaintiff's RFC, the ALJ found that Plaintiff's testimony regarding the functional limitations caused by his mental impairments was inconsistent with his treatment notes.  (Admin. R. at 32.)  Thus, as defined in 20 C.F.R. § 404.1567(b), the ALJ found

that through the DLI, Plaintiff had the RFC to perform light work with the following accommodations:

> [E]xcept that the claimant can lift and carry 20 pounds occasionally, 10 pounds frequently, can stand or walk for 6 hours in an 8 hour workday, can sit for 6 hours in an 8 hour workday, can occasionally climb ramps and stairs, kneel, stoop, crouch, but cannot crawl or climb ladders, ropes or scaffolds. The [Plaintiff] cannot have concentrated exposure to temperature extremes of heat and cold, wetness, or humidity, and must avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation. The [Plaintiff] will be off task 10% of the workday due to his impairments.

(Admin. R. at 28-29.)  The AJL concluded that Plaintiff "was capable of performing past relevant work as an automobile salesperson" because "[t]his work did not require the performance of work-related activities precluded by the [Plaintiff's RFC]." (Admin. R. at 35.)

At step five, although the ALJ already concluded that Plaintiff was capable of performing past relevant work, she nonetheless found that "there are other jobs existing in the national economy that he is also able to perform." (Admin. R. at 35.)

## B.   Issues on Appeal

Plaintiff raises two arguments in support of remand.  First, Plaintiff argues the ALJ failed to include all of Plaintiff's mental limitations in her RFC finding to account for Plaintiff's moderate and mild limitations.  (Pl. Br. at 9-14.)  Specifically, Plaintiff submits that the ALJ failed to include Plaintiff's moderate limitations in understanding, remembering, or applying information and his mild limitations interacting with others.  In that same connection, Plaintiff contends that the ALJ erroneously found that Plaintiff could perform his past relevant occupation, despite these limitations.  (Pl. Br. at 14-18.)  Second, Plaintiff argues that the ALJ improperly applied the Medical Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Table 1, Appendix 2, also known

as the "grids," to direct a finding of disability at step five of the sequential evaluation process.  (Pl. Br. at 17.)  The Court will address these arguments, in turn.

>    i.    *The ALJ's RFC Determination and Evaluation of Relevant Evidence*

Plaintiff first argues that the ALJ failed to include in her RFC and her hypothetical questions to the vocational expert all of the mental limitations that she found credible.  (Pl. Br. at 9-14.)   Plaintiff contends that "by finding that [Plaintiff] had severe mental impairments, [including depression and anxiety disorder,] the ALJ was inherently finding that [Plaintiff] had limitations on his ability to perform basic work-related mental activities." (Pl. Br. at 9) (citing Admin. R. at 25).  Plaintiff also submits that "[t]here can be no doubt that the ALJ found that [Plaintiff] had moderate limitations in adapting or managing himself and mild limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself."  (Pl. Br. at 6.)  Despite this, however, Plaintiff claims that the ALJ failed to include Plaintiff's moderate limitations in understanding, remembering, or applying information or his mild limitations interacting with others in her RFC determination or hypothetical questions to the vocational expert.  (Pl. Br. at 6.)  According to Plaintiff, this error is substantial because the ALJ found that he could perform his past relevant occupation as an automobile salesperson, a "highly social and skilled job." (Pl. Br. at 10.)  Plaintiff further highlights the vocational expert's testimony that a hypothetical person with Plaintiff's same background who could only "have incidental contact with the public but not with tasks that involve direct customer service" would not be able to perform the job of automobile salesperson.  (Pl. Br. at 11) (citing Admin. R. 90-91.)  Thus, Plaintiff argues that remand is required because the ALJ provided no explanation for how Plaintiff could perform his "highly social" past relevant work with limitations on social interaction.

At the outset, Plaintiff does not challenge the ALJ's conclusion that he had only mild limitations with respect to his ability to interact with others; concentrate, persist, or maintain pace; and adapt or manage himself, nor does Plaintiff contest the ALJ's finding of moderate limitations with respect to understanding, remembering, or applying information.  Rather, Plaintiff argues that the ALJ did not adequately address how Plaintiff could perform his prior work in light of those mild and moderate limitations.  I agree with Plaintiff's position.

The court's decision in *Curry v. Comm'r of Soc. Sec.*, No. 15-cv-07515, 2017 WL 825196, at *4 (D.N.J. Mar. 2, 2017) demonstrates why remand is appropriate under the facts of this case. In *Curry*, the court remanded the matter because the ALJ failed to properly consider the plaintiff's mild to moderate impairments in the RFC analysis.  2017 WL 825196, at **4–6.  There, like here, the ALJ found that the plaintiff suffered mild to moderate mental impairments at step two of the analysis.  *Id.* at *5.  However, in conducting the subsequent RFC analysis, the ALJ made only a "passing reference to the medical evidence regarding [the plaintiff's] mental health." *Id.* Indeed, "nowhere in the ALJ's RFC assessment" did she "specifically consider or address the impact of Plaintiff's mental limitations on her ability to work as an administrative assistant." *Id.* Although the court noted that the impact of those limitations on the plaintiff's ability to work "may be *de minimus*, or only require minor modifications of Plaintiff's RFC," he declined to "independently determine" their impact on the plaintiff's RFC.  *Id.*  Thus, the case was remanded "so that the ALJ may properly consider how Plaintiff's mental impairments affect her RFC and her capability to perform past relevant work." *Id.*; *see also Balla v. Comm'r of Soc. Sec.*, No. 18-00386, 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) (remanding to the ALJ because she did not "explain the 'impact of [the] Plaintiff's mental impairments on her ability to' complete the relevant work"); *Engle v. Berryhill*, No. 17-2185, 2019 WL 1003597, at *4 (M.D. Pa. Mar. 1, 2019) (holding that

substantial evidence did not support the RFC and remanding because "the ALJ's decision is not clear whether the ALJ gave full consideration to plaintiff's mental impairments and whether he adequately accounted for them in determining her symptoms and her RFC"); *Kich v. Colvin*, 218 F. Supp. 3d 342, 359 (M.D. Pa. 2016) (holding that substantial evidence did not support the RFC, and remanding because the ALJ provided no explanation as to why he excluded from the RFC any limitations related to the claimant's mild mental limitations).

Here, while the ALJ appropriately relied on certain discrepancies and inconsistencies between the objective medical evidence in the record and Plaintiff's subjective complaints related to his anxiety and depression,[2] she never addressed how Plaintiff's other mild or moderate mental limitations, such as his difficulties understanding, remembering, or applying information or his difficulties interacting with others, might impact his prior work as an auto salesperson. The ALJ does not reference Plaintiff's other mild or moderate mental limitations in her RFC analysis and, as in *Curry*, the ALJ fails to clearly explain the "impact of Plaintiff's mental impairments on [his] ability to" complete the relevant work. *Curry*, 2017 WL 825196, at *5. Indeed, simply having non-severe, mild or moderate mental limitations does not necessarily indicate that Plaintiff could

---

[2]     Specifically, in discussing Plaintiff's anxiety and depression, the ALJ emphasized Plaintiff's repeated vacillating with respect to his mental struggles, as well as inconsistencies between Plaintiff's testimony regarding the existence, severity, and persistence of symptoms related to anxiety and depression and the objective medical findings and treatment notes provided by his treating providers. In that regard, the record indicates that although Plaintiff first reported suffering from anxiety and depression on June 1, 2016, he denied having mood swings, memory loss, phobias, or insomnia, and he further denied having anxiety and depression all together three weeks later on June 22, 2016. Plaintiff also denied having depression, anxiety, mood swings, insomnia, or phobias on September 29, 2016, before stating on December 1, 2016, that his depression had "somewhat improved." Moreover, the ALJ found that several treating medical providers, including Dr. Miller, Ms. Class, and Ms. Fallon, reported that during their consultations and evaluations of Plaintiff, he was cooperative, exhibited appropriate mood and affect, and displayed normal judgment, which the ALJ found to be contrary to Plaintiff's testimony and other subjective evidence.

perform his past relevant work at the calculated RFC -- especially when that prior work is considered "skilled" labor.  Specifically, it is undisputed that the ALJ found Plaintiff to have other mild and moderate mental limitations, in addition to his anxiety and depression, including moderate limitations in understanding, remembering, or applying information and mild limitation in interacting with others.  It is also undisputed that Plaintiff's prior work as an automobile salesperson requires at least some degree of social interaction, mental acuity, and is considered "light and skilled" work.  Thus, the ALJ must expressly consider the impact of Plaintiff's moderate and mild limitations on his interactions with others when determining whether Plaintiff retained the ability to perform his prior work.[3]  As the *Curry* Court explained, the impact of those limitations on Plaintiff's ability to work "may be *de minimus*, or only require minor modifications of Plaintiff's RFC," but this Court declines to independently make that finding here.  *Curry*, 2017 WL 825196, at **5–6.

    *ii.*   *The ALJ's Step Five Determination*

At step five, despite concluding that Plaintiff could perform his past relevant work, the ALJ alternatively found that considering Plaintiff's age, education, work experience, and RFC, other jobs exist in the national economy that he could perform.  This finding, however, is erroneous for substantially the same reasons as discussed above, *supra*.  Notably, the ALJ did not consider Plaintiff's mild or moderate mental limitations in reaching her alternate step five finding, nor did she solicit testimony from the vocational expert related to these additional jobs in light of Plaintiff's mild and moderate mental limitations.  Rather, the ALJ did not identify these alternate

---

[3]    While the Commissioner argues that the ALJ accounted for Plaintiff's mild and moderate mental limitations in her RFC analysis by allowing Plaintiff to be off task for 10% of the workday, that limitation was expressly found only in connection with Plaintiff's anxiety and depression. (Admin. R. at 33.)

jobs with any form of specificity, stating in conclusory fashion only that "there [are] other jobs existing in significant numbers in the national economy that [Plaintiff] is also able to perform." (Admin. R. at 35-36). Without more, this analysis at step five is insufficient. Accordingly, the Court remands this case for the ALJ to consider how, if at all, Plaintiff's mental limitations impact his RFC and ability to work.[4]

## IV. **CONCLUSION**

For the reasons set forth above, the Court vacates the decision denying benefits and remands this matter for further proceedings.

Dated: September 8, 2021

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge

---

[4] Plaintiff also argues that remand is required because the ALJ's step five finding is not supported by substantial evidence, because he suffers from non-exertional limitations, and the ALJ incorrectly relied on the medical-vocational grids to deny benefits. (Pl. Br. at 14) (citing *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000) (holding that where a plaintiff has both exertional and non-exertional limitations, an ALJ must take testimony from a vocational expert or consider other similar evidence, such as a learned treatise, rather than solely rely upon the Medical Vocational Guidelines)). Upon remand, however, this issue may be moot should the ALJ amend either her step four or step five findings. As such, the Court need not consider this argument at this time.